STATE v. MACK AUSTIN.

*Ordinance, validity of—Municipal Authority—Police Power—*
*Restraint upon Minors.*

1. The Legislature may declare it unlawful for any minor to enter a bar-room.

2. The Legislature may transfer to municipal bodies created by it the duty and responsibility of exercising a portion of its own police power in such manner as the commissioners may deem necessary.

3. Where the charter of a town authorizes the commissioners "to make such by-laws, rules and regulations for the better government of said town as they may deem necessary, provided the same be not inconsistent with the laws of the land," an ordinance prohibiting an unmarried minor, except when acting as the agent of his parent or guardian, from entering any bar-room or room where spirituous, vinous or malt liquors are kept for sale, is valid, being reasonable and consistent with the laws of the State.

AVERY, J., dissents, *arguendo.*

CRIMINAL ACTION, tried at August Term, 1893, of UNION Superior Court, on appeal from a judgment of the Mayor of the town of Monroe.

The defendant was charged with the violation of an ordinance of the town. Upon the trial in the Superior Court the jury found a special verdict, substantially as follows: "Ordinance No. 62 is that no person who is under twenty-one years of age shall enter any bar-room, etc., pro-

vided the same shall not apply to any minor who is married or who enters as the agent or servant of the parent or guardian; the defendant was twenty years old and not married and was not acting as agent or servant when he entered the bar-room."

The defendant requested the Court to charge that the ordinance was invalid. This was refused, and the defendant was held to be guilty, and appealed.

*The Attorney General,* for the State.

*Messrs. Batchelor & Devereux* and *R. B. Redwine,* for defendant.

BURWELL, J.: The town of Monroe has power and authority "to make such by-laws, rules and regulations for the better government of the town" as the commissioners thereof may deem necessary, provided the same are "not inconsistent with the laws of the land." *The Code,* §3799.

This is an express grant of authority to the officers of this municipal corporation to exercise within the territory made subject to their control the police power of the State, the only expressed restriction upon their action being that the rules and regulations made by them shall not be inconsistent with "the laws of the land."

Authorities need not be cited to prove that the Legislature of the State may transfer to local municipal legislative bodies created by it the duty and responsibility of exercising a portion of its own police power. It seems to be conceded that the Legislature has power to declare it unlawful for any minor to enter a bar-room, and thus protect them from the evil influences that might affect them if exposed to the temptations to which their presence in such resorts might expose them.

This concession is an admission that the ordinance in

question is not repugnant in its provisions to either the Federal or State Constitutions, for those fundamental enactments impose their restraining influence on the Legislature not less than on its creatures—the legislative councils of the towns and cities of the Commonwealth.

There being, then, no ground for maintaining that the ordinance under consideration is invalid because of its unconstitutionality, and the grant by the Legislature to the municipality of the power to exercise its police power in such manner as the commissioners may deem necessary being clear and explicit, it only remains to inquire whether the enactment is consistent with the laws of the State and is reasonable. In the grant of police power to this municipality the restriction imposed is that its ordinance shall not be inconsistent with "the laws of the land." The expression, "the laws of the land," can only refer to the laws of this State—the statutes and common law—by the enforcement of which peace and good order are maintained throughout this State, and by which the conduct of all its citizens, whether they dwell in the cities and towns or not, is controlled. It is not permitted to these local legislative bodies in this State to exercise that portion of the police power entrusted to them upon subjects about which the Legislature has seen fit to enact laws (*Washington* v. *Hammond,* 76 N. C., 33; *State* v. *Brittain,* 89 N. C., 574), nor to adopt ordinances that tend to obstruct the general policy of the State in the exercise of its police power as evinced by its statutes. In the treatise of Horr & Bemis on Municipal Police Ordinances (section 88) it is said: "According to the American theory of municipal existence, the legislation permitted to be exercised by municipal corporations is a mere delegation of the power of the State, and the ordinances created by virtue of this delegated authority are as much a part of the general scheme of legislation as are

the laws of the State. It is, therefore, necessary that they should be consistent with the laws of the State.    *    *    * Municipalities have no power to repeal, directly or indirectly, the laws of the State, and their legislation must accord with the policy of the legislation of the State. If the only measure of authority were the terms of the charter there would often be ordinances plainly within the granted power but irreconcilable with some State law or contrary to the settled policy of the State, a result neither lawful nor intended. Some charters, by express language, restrict the ordinances that may be passed to such as are consistent with the laws of the State. Others are silent upon the subject, but the restriction exists whether expressed or not, and becomes very important in its application."

We can discern no inconsistency between the provisions of the ordinance under consideration and any particular law of the State or the general policy of its legislation. Indeed, we find in it rather a commendable effort on the part of this local legislative body to supplement what the State by its general legislation has done to protect the young of the Commonwealth. The State declares that one who deals in intoxicating liquors shall neither sell nor give to an unmarried minor any such liquors. *The Code*, §1077. This ordinance declares that such minor shall not enter the bar-rooms that are subject to the control of the town. It helps and does not hinder the policy of the State upon this subject. All its tendencies are towards the prevention of the infraction of the law of the State and the preservation of peace and good order. Its rigid enforcement must be desired by the proprietors of saloons, for only danger and trouble can come to them from allowing such persons to frequent their places of business. *State* v. *Kittelle*, 110 N. C., 560. It interferes with none of the saloon-keeper's rights, and is, indeed, contrived in part for his protection.

It prevents minors from exposure to temptation in places where they should not go. The law which forbids any dealer in intoxicating liquors to give or sell to a minor such liquors is valid. Its validity could scarcely be assailed with any show of reason. Black on Intoxicating Liquors, section 42. This ordinance rests upon the same foundation as that law — the right of the State, either by direct general legislation or through its municipal "home rule" agencies, to shield youth from temptation. It has been held (says the author quoted above) that a law against permitting a minor to enter upon and remain in a retail liquor dealer's place of business is valid, and the State has power to enact and enforce such a law even in disregard of the parent's wishes when its object and tendency are to protect the child. *Goldsticher* v. *Ford*, 62 Tex., 385.

What has been said above seems a sufficient refutation of the assertion that the ordinance is unreasonable, oppressive and discriminating. It seems to us a wise and wholesome restraint upon the youth of the community, made in their interest as well as that of the law-abiding keepers of the bar-rooms. It is not oppressive.

The police of our cities and towns—officers charged with the duty of preventing offences as well as of arresting offenders—should have the power and authority to prevent youths from entering saloons. They can derive such authority only from such ordinances. It is not unlawfully discriminating. It applies to all unmarried minors, and is no more obnoxious to this objection than is the section of *The Code* mentioned above and other laws which are made to protect and control the youth of the land. While it is true that all grants of power to municipal corporations should be strictly construed, and that all doubts should be resolved against the authority of the corporation, it is also

true that where, as in this case, the grant of power is plain and unequivocal, Courts will not interfere with, control or nullify the acts of the officers of the municipality except for most cogent reasons. The contrary course would bring about an unseemly intermeddling of the judicial department of the government with the established agencies of the legislative department—the legislative councils of towns and cities—and such intermeddling could but have the effect of hampering the action of those bodies and retarding the development of such communities.

If fraud, dishonesty or oppression is charged against them Courts will be swift to investigate the charge and to correct the evil if found to exist. But other matters, involving mere questions of expediency and judgment, must be decided in another way. We adopt, as applicable here, the language used by Judge DANIEL in *Hellen* v. *Noe*, 3 Ired., 493: "If a majority of the citizens of the town deem the ordinance impolitic or injurious to the people of the corporation, they have the power in their own hands to remedy the evil; but we cannot say that this ordinance is against the general law or is, in itself, unreasonable."

No Error.

AVERY, J., dissenting: I cannot concur in the opinion of the Court, and as my dissent rests upon the idea that the municipality has usurped powers not delegated to it, I deem it proper to give expression to my views.

The only question presented is whether a municipal corporation under a grant of power (1) to make such by-laws, rules and regulations for the better government of said town as they may deem necessary, provided the same be not inconsistent with the laws of the land; (2) to exercise all of the authority conferred on towns generally under chapter 62, second volume of *The Code*, is empowered by

ordinance to prohibit an unmarried minor, except when acting as the agent of his parent or guardian, from entering any bar-room or room where spirituous, vinous or malt liquors are kept for sale.

It was not contended on the argument that the Legislature, in the exercise of its police power, was not authorized to prohibit infants from exposing themselves to such evil influences, nor was it necessary to discuss the question whether the Legislature was empowered by the Constitution to delegate to the municipality the authority to enact the ordinance set forth in the special verdict, unless we discover upon a careful examination that the power has been granted either expressly or by fair implication. 1 Dillon Mun. Corp., sec. 89; *State* v. *Webber*, 107 N. C., 962; 15 Am. and Eng. Enc., 1039. The first contested point, therefore, is whether under the permission to make by-laws, contained in the charter, or under the general act, the authority to enact this ordinance has been incidentally conferred. The Supreme Court of New Jersey stated, in the case of *Taylor* v. *Griswold*, 2 Green, 222, the doctrine upon which the decision of the question involved depends: "Whenever a by-law seeks to alter a well-settled and fundamental principle of the common law, or to establish a rule interfering with the rights of individuals or the public, the power to do so must come from plain and direct legislative enactment. The Legislature may enact laws imposing restraint upon the natural liberties of the people for the benefit of the public morals, provided no constitutional right of the individual is violated, but where a municipal corporation, which is a public agency created by the law-making branch of the government, undertakes to pass laws in derogation of common right it is incumbent upon such municipality to show clearly not only that the Legislature is warranted by the Constitution in delegating

but has actually conferred the power claimed.    Dillon says
(1 Dillon, sec. 325, citing *Taylor* v. *Griswold, supra,* in sup-
port of the proposition): "An ordinance cannot legally
be made which contravenes a common right unless the
power to do so be plainly conferred by a valid and compe-
tent legislative grant, and, in cases relating to such right,
authority to regulate conferred upon towns of limited
powers has been held not necessarily to include the power
to prohibit."    One of the cases cited by Dillon to sustain
this proposition is *Hayden* v. *Noyes,* 5 Conn., 391, where the
Court held that the authority of a town to regulate fishing
in a navigable stream within its limits did not warrant
it in enacting a by-law prohibiting fishing within its
boundaries.

The commissioners of the town of Monroe may by virtue
of its charter "make such by-laws, rules and regulations
for the better government of said town as they may deem
necessary, provided the same be not inconsistent with the
laws of the land."    The word law, in its general sense,
includes statute and common law as well as the Constitu-
tion, and the term "laws of the land" has been so expressly
interpreted by high authority.    12 Am. and Eng. Enc.,
950, note 1; *Insurance Company* v. *Wright,* 22 Am. and Eng.
Corporation cases, 662, note.    The language which was
incorporated in *Magna Charta* and transplanted into all of
our State Constitutions and has been declared equivalent
to "due process of law" is law (not laws) of the land.
The phrase "laws of the land" was construed in the case
cited to include both common and statute law, and by
other Courts to embrace Constitutions also.    Cooley, p. 32.
Is the ordinance in derogation of a right which the com-
mon law from time immemorial has conferred upon a
minor twenty years old?    An individual right is that which
a person is entitled to have or to receive from others or to

do under the protection of the law.   21 Am. and Eng. Enc.,
406 ; *Railroad* v. *Roty,* 6 Neb., 40.   The common law clearly
includes all principles and rules of action established for
the security of the rights of personal liberty and private
property which are not embodied in some express legisla-
tion.   "Personal liberty consists in the power of locomo-
tion, of changing situation, or moving one's person to
whatever place one's inclination may direct, without
imprisonment or *restraint* unless by due course of law."
Anderson's Law Dic., 619 ; 1 Bl. Com., 134.   Mr. Black-
stone says further of this privilege of free locomotion that
it is "a right strictly natural, and the law of England has
never abridged it without sufficient cause, and that in this
Kingdom it cannot ever be abridged at the mere discretion
of the magistrate without the explicit permission of the
laws."   This is a statement of the well-settled doctrine that
even a statute passed by the Legislature must be construed
strictly when it operates to any extent to repeal or abro-
gate any principle of common law, which protects personal
security, personal liberty or private property.

Has an infant a right of locomotion which the common
law protects and other persons are bound to respect?   A
person *sui generis* may enter any house where goods, wares
or groceries are sold, subject only to the right of the pro-
prietor to eject him for misconduct.   An infant labors under
disabilities, as to the power to make contracts or execute a
will, to hold office and to do certain other acts; but the
common law imposes no more restraint upon his locomo-
tion than upon the movements of an adult, except such as
may be incident to parental authority, when exerted.   If,
therefore, the Legislature had attempted by express statute
to prohibit all minors, except those specified in the ordi-
nance, from entering houses of the particular classes therein
mentioned, the law would have been at least subject to a

strict construction whenever the Courts should be called upon to enforce it. When the duty is imposed on the Courts of close scrutiny in searching for a power claimed by implication, it is doubly a duty to see that it exists in some shape and has not been abused in the particular exercise of it, where the legislation drawn in question purports to be under delegated power and operates, if conferred at all, in derogation of a personal right recognized by the common law. Such power does not pass, as we have seen, under the general grant of authority to make all needful by-laws, rules and regulations (Dillon, sec. 325); but not only has the Legislature omitted to confer, but it has positively prohibited, the making of any ordinance not consistent with the laws of the land (whether statute or common law), such as that elementary principle declaratory of the right of an infant to go where he may choose, subject only to the superior authority of the parent to control him, or the Legislature in plain terms to impose restraints for his own protection or the general welfare of the public, and not repugnant to the Constitution.

The other powers conferred upon municipal corporations under the general law are embodied in *The Code*, §§3801 and 3802, which are as follows:

"They may establish and regulate their markets and prescribe at what place within the corporation shall be sold marketable things, in what manner, whether by weight or measure, may be sold grain, meal or flour, if the flour be not packed in barrels, fodder, hay or oats in straw, may erect scales for the purpose of weighing the same, appoint a weigher, fix his fees and direct by whom they shall be paid. And it shall not be lawful for the commissioners or other authorities of any town to impose any tax whatever on wagons or carts selling farm products, garden truck, fish and oysters in the public streets thereof.

"They may pass laws for abating or preventing nuisances of any kind or for preserving the health of the citizen."

In these two sections we find enumerated all of the express powers to pass ordinances, except such as arise under the authority to levy taxes and to repair, improve and open public streets and sidewalks, contained in the sections immediately preceding and following those quoted above. So that if the ordinance, for a violation of which the defendant is indicted, was not passed by virtue of the power to preserve health or abate or prevent nuisances, there is no express warrant for its enactment in the general statute, as there is no sufficient grant of authority to pass it in the charter. The power conferred upon the municipality is not to create by legislation a nuisance not previously known to the law, but to protect the people of a town from annoyance by refusing or prohibiting the creation of what already comes within the legal definition of nuisance. Cooley Const. Lim., pp. 242 and 741, note 2; *Yeates* v. *Milwaukee*, 10 Wall., 497; *Salem* v. *Railroad*, 98 Mass., 431.

In *State* v. *Mott*, 61 Md., 297, cited by Judge COOLEY to sustain substantially the proposition we have laid down, the facts were that the city of Baltimore enacted an ordinance providing that it should "not be lawful for any person, persons or body corporate to work, operate or continue in use, for the purpose of burning oyster shells or stone lime, any kiln situated or erected within the limits of the city of Baltimore, under a penalty," etc. The defendant was charged in the indictment with operating a limekiln *within* the limits of the city of Baltimore for the purpose of burning oyster shells and stone lime, etc. The authority to pass the ordinance was claimed under a provision of the charter empowering the city "to pass ordinances to preserve the health of the city and to prevent and remove

nuisances," being practically identical with section 3802, the only difference being in the order of conferring the powers and in the use of the word "abating" instead of removing, in precisely the same sense. The Court held that it was not a nuisance *per se* to burn a limekiln at any point within the limits of the city, and the corporation was not authorized by grant of power to prevent and remove to prohibit an act not necessarily a nuisance. See also, *Ward* v. *Little Rock*, 41 Ark., 526. Judge Cooley also cited the case of *Fertilizer Co.* v. *Hyde Park*, 70 Ill., 634, in which the Court held in effect that where the Legislature explicitly gave to the town the power after the lapse of two years "to determine what were nuisances and to abate the same," the corporation was not authorized to declare any act a nuisance, which was not a nuisance at common law, till after the expiration of the time mentioned. The Court in this case in a very elaborate argument maintained the right of a private corporation to manufacture fertilizer, despite any general power in the town to protect or prevent nuisance, unless it should create in the conduct of its business a nuisance at common law. It has been held also, for similar reason, that a municipal corporation has no more power to legalize an acknowledged nuisance than it has to prohibit what does not amount to a nuisance as such. *Pettie* v. *Johnson*, 56 Ind., 139; 15 Am. and Eng. Enc., 1185; How. & B. Mun. Corp., 252. It seems needless to multiply authorities, as we might do almost indefinitely, to show that the word "nuisance" in the statute must be interpreted according to its technical meaning.

The Legislature has the authority (no longer questioned in this State) to prohibit the sale of spirituous, vinous or malt liquors, and possibly to declare bar-rooms a nuisance, but the towns cannot prohibit the sale of liquors without express authority from the Legislature to do so. Had the

town attempted by ordinance to prohibit the sale of spirituous liquors to minors only the ordinance would have been void, whether the statute on the subject were in force or repealed, because no such authority is conferred upon it, either expressly or by implication. How, then, does the corporation acquire the power to prohibit a boy, upon whom the law has imposed no such restraint, from entering a house where a business legalized by our statutes is being conducted? It is doubtless desirable that the youth of the State should be guarded against the temptations to which frequenters of such places are subjected. Legislation which will legalize what the Town Commissioners of Monroe have attempted to enact, if it is deemed constitutional, can probably be had for the asking. But the violation of constitutions or statutes under the specious plea of reforming the world in obedience to a higher law is neither excusable upon moral nor defensible upon legal grounds.

I think, for the reasons which I have stated, that neither under the provision of the charter commonly known as the general welfare clause nor under the power to protect health and prevent nuisances can the governing authorities of a municipality enact a valid ordinance purporting to prohibit a boy of twenty years of age from entering where business is conducted presumably under the sanction of the law. The Legislature may put the sale of intoxicants under ban of the law so completely that a place where it is illicitly sold shall be deemed a nuisance, but while such business houses are licensed by law town commissioners cannot brand them, without authority, as places unfit for boys who frequent other stores and saloons.

It was contended on the argument of the case, and not without authority and reason, that had the Legislature instead of the municipality enacted a law prohibiting minors from frequenting the business houses mentioned in

the ordinance in question, the statute would have been unconstitutional and void. Without passing · upon that question or even conceding for the sake of the argument that the Legislature has the power to prevent a minor from being employed in· or even entering a place where intoxicants are sold, it would be none the less essential, in order to give validity to a similar law passed by a municipality, to show the delegation to the corporation of the authority claimed either expressly or by fair implication.

The authorities cited, therefore (Black on Mun. Leg., sec. 42, and numerous cases from the Courts of other States), in support of the legislative authority to pass statutes of the same purport, have no necessary bearing upon the case in the absence of any attempt to delegate the power which the town attempted to exercise.

I think that the Judge below erred in instructing the jury upon the special verdict to find the defendant guilty, and a new trial ought to be awarded.