Hart, J.,
 

 dissenting. The plaintiff in this case is the owner and operator of a trailer park or camp in the village of Brooklyn, and in this action seeks to enjoin the enforcement of an ordinance of that village regulating trailers and trailer camps, insofar as it prohibits the parking of occupied trailers in a trailer camp for a period of more than 60 days; insofar as such ordinance makes him vicariously guilty of an offense in permitting a trailer or its occupants to remain in his trailer camp for a period longer than 60 days or to permit a trailer or the occupants thereof to reenter
 
 *489
 
 the camp for 90 days after the expiration date of a former occupancy; insofar as such ordinance prohibits the occupants of a trailer from entering his park for 90 days after a former occupancy in any other trailer camp in the village; and insofar as such ordinance requires the manager or caretaker of his trailer camp to provide a duplicate registration book and keep a complete daily record in duplicate of the names and addresses of the occupants of each trailer admitted to his camp site, the automobile license and trailer license numbers, and to turn over each day to the marshal of the village a duplicate copy of all registrations and entries for the previous day, the violation of any section of which ordinance subjects him to conviction and a fine of not less than $25 nor more than $49 for each offense, each day’s operations to constitute a separate offense.
 

 With the rights of the plaintiff or the denial thereof, is bound up the rights of his tenants or renters occupying trailers in his park with reference to the right of contract for parking space, the use and occupancy of their property, and their right to select a place of residence in the village in question.
 

 Section 7 of the ordinance in question, as amended April 29, 1941, is as follows:
 

 “Section 7. Parking of occupied trailers in a trailer camp for a period of more than sixty days shall be prohibited, and no trailer camp licensee shall permit a trailer or the occupants thereof to remain in said trailer camp for a period longer than sixty days; nor shall a trailer camp licensee permit a trailer or the occupants thereof to reenter the trailer camp for ninety days after the expiration date of a former occupancy; and it shall be unlawful for the occupants of a trailer to enter or park a trailer in any trailer camp for ninety days after the expiration date of a former occupancy in any other trailer camp within the village limits.”
 

 
 *490
 
 • Goncededly, the village has the right to adopt a reasonable zoning plan whereby certain classes of business or residence may be restricted to certain areas, but the ordinance in question is by no’ means a zoning ordinance. Instead, it authorizes the occupancy of a trailer in a trailer camp in the village for a period of 60 days, but thereafter makes its presence unlawful and its -owner and occupant a lawbreaker until the trailer has been removed from the village for a succeeding period of not less than 90 days. The effect of this ordinance is to deny to the plaintiff and his tenants, as occupants of a trailer, the constitutional right of contract and to the latter their constitutional right of free citizenship and locomotion.
 

 The record shows the plaintiff owns a tract of 6.261 acres of land in the village of Brooklyn upon which he has expended $16,500 in addition to the original cost of the land for the purpose of preparing it for a trailer park. He has constructed thereon, to make it a modern trailer camp with all necessary facilities, over 1,300 feet storm water sewer, over 1,500 feet sanitary sewer, over 1,400 feet of water lines for city water service, and over 1,300 feet of electrical wiring with outlets and meters. He has constructed, under the inspection and approval of the village and the state health authorities, utility buildings with insulated and sound proof partitions, containing washrooms and toilet rooms for both sexes, hot and cold water, washing machines, and clothes drying facilities. It is admitted that his camp and its building structures and equipment meet all the stringent ’ requirements of the village ordinance. In fact, the village has issued to the plaintiff for a fee an annual license to operate this particular park. It has also been inspected, approved and certified in all respects by the authorized officials of the state health department.
 

 The record also shows that of the trailer residents in this park, some spend their winters in Florida and
 
 *491
 
 'return to the park for the summer, some are retired people, some are school teachers, some are workers in downtown stores, some work on the railroads and others in .the shops in that neighborhood.
 

 One of the witnesses for the plaintiff is and has been a teacher of social science and history in the Lincoln High School for 15 years. He, with his wife, had resided continuously in a trailer in this park for 13 months preceding the trial of this case. He testified that the camp was free from disease, that there was no disorderly and Immoral conduct, and that there were no offensive odors in the camp; that it was very well kept and states that he finds it “is one of the nicest groups of people that I have come in contact with, as people, as a community.” He testified that there is no crime problem in this camp and that the only time he saw an officer about the camp was when the village marshal came to his trailer one night at ten o’clock to serve an eviction notice upon him.
 

 Another witness who resides in a trailer in this park is engaged in photogravure work. He testified that there is no illness in the camp; that the trailer people are of high character; that the sanitary conditions are good and that there are no offensive odors except occasionally from manufacturing plants outside the park.
 

 Still another witness who is a trailer resident in this park is and has been assistant display manager for the May Company for 19 years. He testified that he, his wife, and son eight years of age, have lived in a trailer in this park since September 4, 1939; that he and his fámily prefer this method of living for the health of his wife and son; that a fine class of people reside in this park and that there is no disorderly conduct.
 

 The only witnesses who appeared for the defense were the village officials. They did not, in fact, controvert any of the above testimony, but testified that
 
 *492
 
 three or four people had objected to the location of the camp but they all resided from one-half to two miles from it. The only real complaint made was to the stay-period at the camp.
 

 The drastic and oppressive features of the ordinance in question serve no useful or legitimate purpose. Its unreasonableness is apparent when its operation is considered. It does not remove the trailer park from the village or from the neighborhood. In fact, the continued operation of the park is contemplated and authorized by the terms of the ordinance itself, which provides for the granting of a license to the owner or operator of the park to operate it as a trailer park under sanitary and healthful conditions, as to which there is no complaint so far as plaintiff’s park is concerned. The ordinance, by implication at least, authorizes the very use which the plaintiff is making of his property as a trailer park. The ordinance requires each occupant of a trailer, under severe penalty, to move off his rented lot or park space and out of the park after 60 days occupancy. He is not permitted to park in this or any other trailer park in the village for a period of 90 days, even though he may have been a permanent resident of the village before he chose to live in a trailer. He is not even permitted, during this 90-day period, to go back to the park either with or without his trailer to visit his former neighbors and friends in the park without being subject to arrest under this ordinance. In the meantime, any other trailer and its occupants, no difference how much less desirable than the one which has vacated, may move into the same space or parking lot for 60 days, and still another may do the same for the next period of 30 days, after which the original trailer and its same occupants, having gypsied about the country outside of this particular village for 90 days, may return to the very same location and live in the park under the same conditions as upon
 
 *493
 
 the former occupancy for another 60 days when he must again move out. In other words, a trailer may occupy the same space or lot continuously but the occupancy must be
 
 by a different trailer
 
 and different occupants every 60 days. Under this fantastic merry-go-round system of operation, what has been gained by the village where the park is located or the residents of that village, except to witness the annoyance and inconvenience which has been caused to the plaintiff and his trailer tenants about whose conduct no complaint has been made?
 

 This court, and indeed all courts of the land, have held that while a state or municipality may make all reasonable, necessary and appropriate provisions to promote the health, morals, peace and welfare of the community, such provisions must not be unreasonable; that the means adopted must be suitable to the end in view, must be impartial in operation and not unduly oppressive upon individuals, and must have a real and substantial relation to their purpose, and not interfere with private rights beyond the necessities of the situation.
 
 Froelich
 
 v.
 
 City of Cleveland,
 
 99 Ohio St., 376, 124 N. E., 212; 8 Ohio Jurisprudence, 358, 359;
 
 Wondrak
 
 v.
 
 Kelley,
 
 129 Ohio St., 268, 195 N. E., 65;
 
 Nebbia
 
 v.
 
 New York,
 
 291 U. S., 502, 78 L. Ed., 940, 54 S. Ct., 505.
 

 While under the police power, legislative bodies may regulate persons and property in the interests of public health, public morals and public safety, this power is limited by constitutional protection so that a citizen may not unreasonably, arbitrarily, or without due process of law, be deprived of his life, liberty and property. This constitutional right of a citizen cannot be abridged or destroyed under the guise of police regulation. Legislative bodies cannot by mere declaration make that a nuisance as a matter of law which is not a nuisance as a matter of fact but may become so only by reason of circumstances.
 

 
 *494
 
 Personal liberty which includes the right of a citizen to choose his place of abode is one of the natural rights which has been protected by its inclusion as a guarantee in all the constitutions of this country.
 
 Crawford
 
 v.
 
 Brown,
 
 321 Ill., 305, 151 N. E., 911, 45 A. L. R., 1457;
 
 Brett
 
 v.
 
 Building Commr. of Brookline,
 
 250 Mass., 73, 145 N. E., 269;
 
 Bamel
 
 v.
 
 Building Commr. of Brookline,
 
 250 Mass., 82, 145 N. E., 272.
 

 The right of personal liberty includes the power of locomotion, of changing situation, or removing one’s person to whatever place one’s inclination may direct without any restraint except by due process of law. 16 Corpus Juris Secundum, 585, Section 202;
 
 Civil Rights Cases,
 
 109 U. S., 3, 27 L. Ed., 835;
 
 Pinkerton
 
 v.
 
 Verberg,
 
 78 Mich., 573, 44 N. W., 579, 7 L. R. A., 507;
 
 State
 
 v.
 
 Austin,
 
 114 N. C., 855, 19 S. E., 919, 25 L. R. A., 283;
 
 City of Watertown
 
 v.
 
 Christnacht,
 
 39 S. D., 290, 164 N. W., 62, L. R. A. 1917F, 903;
 
 Eco parte Hudgins,
 
 86 W. Va., 526, 103 S. E., 327, 9 A. L. R., 1361.
 

 By reason of being a citizen of the United States, one automatically becomes a citizen of'the state and the municipality in which he chooses to reside. A person’s right to live in the place of his choice does not depend upon the style or architecture of his abode. So long as he commits no crime and is obedient to reasonable regulations relating to the general welfare, the public health and safety of the community in which he lives, there he may remain.
 
 Curran Bill Posting & Distributing Co.
 
 v.
 
 City of Denver,
 
 47 Colo., 221, 227, 107 P., 261, 264;
 
 Edwards
 
 v.
 
 State of
 
 California,____ U. S.,----,86 L. Ed., Advance Opinions, 133. There appears to be nothing unusual about living in a trailer The petition alleges that 600,000 trailers were manufactured in this country in 1937. If this is a fact, it is obvious that there must be a great demand for this ldnd of housing, and whether the demand arises from the standpoint of economy, the quest of pleasure from travel, the demands of health, or the shifting needs of
 
 *495
 
 employment, no reason can be assigned as to why the occupants of a trailer should be forced out of any municipality for a particular period of time for the sole reason that they occupy a'trailer.
 

 In my opinion, the features of the ordinance to which attention has been called in this dissenting opinion are unreasonable and, therefore, void.
 

 Williams, J., concurs in the foregoing dissenting opinion.